File Name: 12a0473n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 10-4357

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

*May 04, 2012*

LEONARD GREEN, Clerk

MARK E. DOTTORE,

      Plaintiff-Appellee,

v.

THE HUNTINGTON NATIONAL BANK,

      Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:     KEITH, MARTIN, and BOGGS, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. The Huntington National Bank appeals the district court's denial of Huntington's motion to compel arbitration in a case regarding investment fraud. David Dadante allegedly operated an investment fund that was actually a Ponzi scheme. In the matter before this Court, Mark Dottore, the receiver for the investment fund, alleges that Huntington breached its duty of care to the fund investors and aided Dadante in committing fraud. Huntington moved to compel arbitration on this claim, arguing that there exists between the parties an agreement to arbitrate claims. The district court found there was no agreement to arbitrate and denied Huntington's motion. Huntington appeals, arguing that the district court erred in finding there was no arbitration agreement. For the following reasons, the judgment of the district court is **AFFIRMED**.

"We review *de novo* a district court's decisions regarding both the existence of a valid arbitration agreement and the arbitrability of a particular dispute." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010) (alteration and internal quotation marks omitted).

While we recognize the federal policy favoring arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (internal quotation marks omitted); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). We thus consider whether, under Ohio law, the parties have agreed to submit this dispute to arbitration.

Under Ohio contract law, "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St. 3d 130, 132, 509 N.E.2d 411, 413 (Ohio 1987). "Contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement." *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St. 3d 271, 275, 638 N.E.2d 572, 575 (Ohio 1994). Thus, when the latter writing "is complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties." *Id.*; *see also State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104

Ohio St. 3d 559, 564, 820 N.E.2d 910, 915 (Ohio 2004) ("The purpose of contract construction is to effectuate the intent of the parties, and that intent is presumed to reside in the language they chose to employ in the agreement. Courts resort to extrinsic evidence of the parties' intent only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." (citations and internal quotation marks omitted)). "A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." *Bellman v. Am. Int'l Grp.*, 113 Ohio St. 3d 323, 326-27, 865 N.E.2d 853, 857 (Ohio 2007). Where a contract is found to be integrated, courts consider the language of the contract alone to define the obligations by which the parties intended to be bound. *Id.*, 865 N.E.2d at 856-57 ("The parol-evidence rule . . . assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document were not intended by the parties to survive." (alteration and internal quotation marks omitted)).

When Dadante opened fund accounts with Great Lakes Bank and Metropolitan Bank in 2001, he signed agreements governing the accounts. Neither party has been able to find the original, signed account agreements, but they agree these documents did not include an arbitration agreement. In 2003, both Great Lakes and Metropolitan merged into Sky Bank, succeeded in interest by Huntington. At the time of the merger, Huntington sent notices to all bank customers, attaching a document labeled "Deposit Account Agreement and Disclosure" which informed the recipients of the "terms and conditions" under which their accounts would now be governed; these terms and conditions include an agreement to arbitrate. In 2005, Frank Regalbuto, a representative of the

investment fund, signed and filed a change of signature with Huntington, substituting himself for Dadante on the fund's account. The second page of the 2005 change of signature document is titled "YOUR DEPOSIT ACCOUNT TERMS AND CONDITIONS" and reads: "AGREEMENT – These terms govern the operation of this account unless varied or supplemented in writing . . . . Each of you agrees . . . to the terms of this account." This document does not include an agreement to arbitrate.

We do not need to determine whether the original 2001 account agreements allow or prohibit amendments such as those in the 2003 notice or whether the parties were bound by the unsigned 2003 notice of account terms. No enforceable arbitration agreement exists between the parties because the 2005 change of signature document governs the account and it does not include an agreement to arbitrate. This 2005 document is entitled "account terms and conditions." The document provides an array of terms and conditions to govern various aspects of the operation of the account, including clauses regarding "liability," "deposits," "withdrawals," "ACH and wire transfers," "ownership of [the] account and beneficiary designation," "amendments and termination," "direct deposits," and "unclaimed funds." The document does not incorporate any documents by reference. By its own terms, the document limits the agreement governing the operation of the account to those terms and conditions contained within the document, "unless varied or supplemented in writing." It has not been. We hold that the 2005 agreement is "complete and unambiguous on its face" and evidences the parties' intent for the account to be governed by this document. Therefore, we do not consider outside evidence in our determination of the obligations by which the parties intended to be bound. *See TRINOVA Corp.*, 70 Ohio St. 3d at 275, 638 N.E.2d at 575; *Petro*, 104 Ohio St. 3d at 564, 820 N.E.2d at 915.

Because the agreement is complete and unambiguous, Ohio law presumes it is integrated.

*See Bellman*, 113 Ohio St. 3d at 326-27, 865 N.E.2d at 857. The integrated agreement does not

contain an agreement to arbitrate. Therefore, the district court did not err in denying Huntington's

motion to compel arbitration.

The judgment of the district court is **AFFIRMED**.