Filed 10/2/15  Maxon v. Initiative Legal Group CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TERRI MAXON, as successor-in-interest,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>INITIATIVE LEGAL GROUP APC, et al.,<br><br>        Defendants and Appellants. | A139068<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-523966) |

Plaintiff David Maxon sued his former attorneys for breach of fiduciary duty, violation of Business and Professions Code section 17200, and declaratory relief arising out of their representation of him in wage and hour claims against his former employer.[1] His former attorneys (defendants and now appellants in this matter) petitioned to compel arbitration of plaintiff's claims, relying on an arbitration clause in the attorney-client agreement between them and plaintiff.  Plaintiff opposed the petition on the ground that, although he had signed the agreement, defendants had never signed it, and thus no contract was ever formed and, perforce, no agreement to arbitrate.

The trial court denied the petition to compel arbitration without expressly reaching the issue of whether an attorney-client agreement was formed.  Instead, its analysis was

---

[1] David Maxon died on March 6, 2015, after this appeal was fully briefed.  We granted the request of his wife, Terri Maxon, to be substituted as successor-in-interest. Because the circumstances of this matter concern David Maxon, we will refer to him as "plaintiff."

1

based on Business and Professions Code sections 6147 and 6148, which state that an attorney-client fee agreement not signed by the attorney is voidable at the client's option. The trial court found that this option to void the agreement was incorporated into the fee agreement as an express term and that, as a matter of fact, plaintiff had exercised his option to void the agreement, including the arbitration clause.

Defendants appeal the order denying the petition to compel arbitration. We agree with the trial court's decision, and will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Plaintiff Signs a Fee Agreement Containing an Arbitration Clause.*

Plaintiff was formerly employed by Wells Fargo Bank as a Home Mortgage Consultant (HMC). In 2010, defendants[2] approached plaintiff about representing him in possible wage and hour claims against Wells Fargo. Defendants sent plaintiff a two-page "Attorney-Client Agreement" that proposed the terms of their representation. The Attorney-Client Agreement contained an arbitration clause stating that plaintiff and defendants "agree to submit all disputes between them to binding arbitration."[3] Plaintiff signed the Attorney-Client Agreement on May 26, 2010. The agreement was never signed on behalf of defendants.

*Plaintiff Alleges Serious Misconduct Against Defendants.*

Plaintiff commenced this action on September 5, 2012, suing defendants for breach of fiduciary duty, violation of Business and Professions Code section 17200 et

---

[2] The named defendants are Initiative Legal Group APC, Initiative Legal Group LLP, Marc Primo Pulisci (a/k/a Marc Primo), G. Arthur Meneses, Monica Balerrama, and Joseph S. Liu.

[3] The arbitration clause, which appeared in all capital letters, stated in full: "Attorneys and Clients agree to submit all disputes between them to binding arbitration by a single neutral arbitrator in Los Angeles selected by the parties, to be preceded by mediation with all parties present. Binding arbitration shall be governed by the laws and procedure governing superior court civil actions in California. Client is advised that by agreeing to binding arbitration, client is giving up their [sic] right to a jury trial and other procedural aspects of a jury trial. Any decision shall be subject to appeal to a second arbitrator who shall proceed, as far as practicable, pursuant to the laws and procedure governing civil appeals in California."

seq, and declaratory relief. Plaintiff sought to represent himself and a purported class of approximately 600 other HMC's who had also retained defendants to prosecute wage and hour claims against Wells Fargo (the purported class). Plaintiff's causes of action are based on allegations of serious misconduct by defendants related to their representation of plaintiff and the purported class. In essence, plaintiff alleges that defendants and Wells Fargo agreed to a $6 million settlement of the lawsuits filed by defendants on behalf of plaintiff and the purported class. The $6 million settlement was a "supplemental" settlement and part of a global settlement in which Wells Fargo also agreed to pay $19 million to settle separate class actions instituted by other counsel. Plaintiff alleges that defendants schemed to keep the $6 million supplemental settlement for themselves as attorneys' fees by encouraging plaintiff and the purported class to participate in the $19 million class action settlement while hiding details about the $6 million supplemental settlement from plaintiff and the purported class.

Shortly after commencing this action, plaintiff successfully moved to intervene in *Lofton v. Wells Fargo Home Mortgage* (S.F. Super. Ct. Case No. CGC-11-509502), the matter in which the trial court had already given final approval to the $19 million class action settlement. Among other things, plaintiff successfully sought a temporary restraining order requiring approximately $5.5 million of the $6 million supplemental settlement to be deposited into a trust account.[4]

*Defendants Petition to Compel Arbitration in this Matter.*

In October 2012, defendants' counsel sent a letter to plaintiff's counsel demanding arbitration of "all claims that have been brought" in this action. Plaintiff did not respond to the demand to arbitrate.

On December 5, 2012, defendants filed a petition to compel arbitration of plaintiff's individual claims. On December 24, plaintiff's counsel sent defendants' counsel a letter stating that "there was never an agreement reached or formed" between

---

[4] Our colleagues in Division Three affirmed the trial court's decision to grant plaintiff's request for a temporary restraining order. (See *Lofton v. Wells Fargo Home Mortgage* (2014) 230 Cal.App.4th 1050, 1063.)

3

plaintiff and defendants, and that "[t]o the extent [defendants] now claim that there was such an agreement, and that a document dated May 26, 2010 manifests that agreement, [plaintiff] hereby formally exercises his option to void that purported or proposed agreement in accordance with the provisions of Business and Professions Code §6147(b) and §6148(c)." These provisions of the Business and Professions Code state, in essence, that a contract for legal services must be in writing and signed by the attorney, and that the failure to comply with these requirements "renders the agreement voidable at the option of the plaintiff." (Bus. & Prof. Code, §§ 6147, subd. (b); 6148, subd. (c).)[5]

In March 2013, plaintiff filed an opposition to the petition to compel arbitration. Plaintiff's argument against arbitration was that the parties never formed an agreement to arbitrate because defendants never signed the Attorney-Client Agreement.

After a lengthy hearing, the trial court denied the petition to compel arbitration, but on a different ground than the one argued by plaintiff. The trial court found it unnecessary to address plaintiff's contention that no written agreement had been formed. Instead, it found that because defendants had not signed the agreement, plaintiff had an option to void it pursuant to Business and Professions Code sections 6147 and 6148 and

---

[5] Section 6147 applies to contingency fee contracts and states "An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative." (Bus. & Prof. Code, § 6147, subd. (a).) Section 6148 applies to other legal services contracts not based on a contingency fee, such as one based on an hourly rate. It states: "In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative." (Bus. & Prof. Code, § 6148, subd. (a).) Both sections state that "[f]ailure to comply with any provision of this section renders the agreement voidable" at the option of the client, and that if the agreement is voided, the attorney is "entitled to collect a reasonable fee." (Bus. & Prof. Code, § 6147, subd. (b); § 6148, subd. (c).) The parties agree that the Attorney-Client Agreement at issue here is subject to both sections because it provided for both contingent and, alternatively, hourly attorneys' fees.

4

that, as a matter of fact, plaintiff had exercised the option to void the agreement, including the arbitration clause. The trial court's order stated, in part:

"As a matter of law, an attorney-client fee agreement not signed by the attorneys is voidable at the client's option. Bus. & Prof. Code §§ 6147-48. Under the rules of contract interpretation, that option is read into such an agreement as if it were an express term of the agreement. As the California Supreme Court explained in *Edwards v. Arthur Andersen, LLP*, 44 Cal. 4th 937, 954 (2008), '[a]ll applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.' . . . [¶] [Plaintiff] Maxon filed this action against defendants on September 5, 2012. About a week later in a separate lawsuit, Maxon intervened and obtained a temporary restraining order against the defendants ordering them to deposit into a court-controlled account the $5.5 million at issue in this case. Thereafter, in November, Maxon effectively rejected defendants' request that he arbitrate his claims, and in December, in an abundance of caution, Maxon advised defendants by letter that he was exercising his contractual right to void the agreement, assuming one existed at that time. That course of conduct persuasively establishes, and this Court finds as a factual matter, that Maxon has exercised his contractual right to void the entire agreement, including its arbitration clause. This finding of fact leads inexorably to the legal conclusion that the attorney-client agreement, including its arbitration provision, no longer exists."

The trial court addressed a line of United States Supreme Court cases cited by defendants' counsel, including *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395 (*Prima Paint*). According to the trial court, "Defendants' reliance on *Prima Paint, supra,* 388 U.S. 395 . . . and its progeny is misplaced. Those cases hold that general attacks on the validity of an entire agreement, as opposed to specific challenges to the validity of an arbitration clause within that agreement, must be sent to arbitration. . . . This Court's ruling is predicated on its interpretation of the attorney-client agreement and giving effect to its terms; it has nothing to do with resolving a challenge to

5

its validity. Put differently, there simply is no general attack on the validity of the attorney-client agreement for the arbitrator to resolve, and it is for this Court to decide whether there exists a commitment to arbitrate. The authorities cited by defendants do not excuse defendants from the statutory requirement of establishing the *existence* of an agreement to arbitrate. [¶] As noted, under the very terms of the contract here at issue, there is no commitment to arbitrate. Defendants seek specific performance of an agreement which no longer exists, and it is axiomatic that a court does not properly grant such relief, at least in the circumstances here presented. The situation at hand is analytically indistinguishable from one in which a party seeks to enforce a contract which has expired by its own express terms. In the latter situation, a court would simply read the contract and decline any invitation to enforce it. This Court likewise does the same here."

The trial court concluded by saying that "this Court recognizes that Maxon has advanced a somewhat different analysis from that set forth above. Maxon's contention is that no written attorney-client agreement was ever formed or consummated by reason of the failure of counsel to sign the writing. Given the Court's ruling, it is unnecessary to address that contention. [¶] In conclusion, the petition is denied."

Defendants timely appealed the trial court's order denying their petition to compel arbitration.

## STANDARD OF REVIEW

Where the relevant facts are undisputed, we review a trial court's denial of a petition to compel arbitration de novo. (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.)

## DISCUSSION

Defendants argue that "[t]he trial court erred in deciding that the arbitration provision contained within the [Attorney-Client] Agreement was unenforceable because the entire [Attorney-Client] Agreement had purportedly been 'voided' by Maxon, and thus the court found no agreement to arbitrate existed at the time of the petition to compel arbitration. In doing so, the trial court ignored decades of directly-on-point United States

6

Supreme Court precedent requiring that an arbitration provision contained within a contract must be enforced as a separate agreement, even if the contract itself is void." According to defendants, "[u]nder the severability doctrine, once an agreement is formed, all attempts to revoke or rescind the entire agreement must be arbitrated."

Under the Federal Arbitration Act (FAA)—which defendants argue applies to this matter—a general attack on the "validity" of a contract containing an arbitration clause "is considered by the arbitrator in the first instance." (*Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445-446 (*Buckeye*).) But, before a dispute can be referred to arbitration, a court must be "satisfied that the parties agreed to arbitrate *that dispute*." (*Granite Rock Co. v. International Broth. of Teamsters* (2010) 561 U.S. 287, 297 (*Granite Rock*).) "[T]he '*existence* of a valid agreement to arbitrate involves general contract principles, and state law governs disposition of that question. [Citations.]' [Citation.]" (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634 (*Cione*).) The party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 237.)

Here, the issue of whether plaintiff voided the Attorney-Client Agreement goes to the existence of an agreement to arbitrate, not its validity. Accordingly, the trial court was correct in analyzing this issue itself in the first instance, instead of compelling arbitration. The trial court determined that the attorney-signature requirement of sections 6147 and 6148 was an express term of the Attorney-Client Agreement—a determination that defendants do not dispute. The trial court then made a factual finding that, prior to the hearing on the petition to compel arbitration, plaintiff had undertaken steps to void, and had in fact voided, the Attorney-Client Agreement pursuant to this provision. The trial court stated that "[t]his finding of fact leads inexorably to the legal conclusion that the attorney-client agreement, including its arbitration provision, no longer exists."

The United States Supreme Court in *Granite Rock, supra*, 561 U.S. 287, reached the same conclusion in a similar case involving a labor dispute. In *Granite Rock*, a labor union moved to compel arbitration of a dispute regarding strike-related damages based on

7

an arbitration clause in a collective bargaining agreement (CBA). (*Id.* at p. 295.) The employer and labor union agreed that they had formed an agreement to arbitrate as part of a CBA, but they disputed the date on which the union ratified the agreement. (*Id.* at p. 297.) The labor union argued that an arbitrator, and not the court, should decide the date on which the agreement was ratified, but the Supreme Court disagreed. (*Id.* at p. 298.) The Supreme Court determined that the ratification-date issue "requires judicial resolution here because it relates to [the union's] arbitration demand in such a way that the District Court was required to decide the CBA's ratification date in order to determine whether the parties consented to arbitrate the matters covered by the demand." (*Id.* at p. 304.) The same reasoning applies here: the trial court was presented with a question of whether an agreement to arbitrate existed on a certain date. The trial court correctly determined that it should decide the issue instead of referring the matter to arbitration.

Defendants argue that *Granite Rock* is distinguishable because it concerned the formation of an arbitration agreement, not whether an agreement was voided after it was formed. Other cases make clear that the issue of an arbitration agreement's existence concerns not just its formation, but also subsequent acts by the parties that extinguish the agreement. *Cione, supra*, 58 Cal.App.4th 625 is instructive on this point. In *Cione*, the plaintiff-employee signed a Uniform Application for Securities Industry Registration (Form U-4) that contained an arbitration clause requiring plaintiff to arbitrate disputes he had with his defendant-employer. (*Id.* at pp. 630-631.) Plaintiff subsequently entered into an employment agreement with the defendant that did not contain an arbitration clause. (*Id.* at p. 631.) When defendant later submitted an employment-related dispute with plaintiff to arbitration pursuant to the arbitration clause in the U-4, plaintiff opposed arbitration, arguing that the employment agreement superseded the U-4 and its arbitration clause. (*Id.* at pp. 631, 633.) Like the trial court did in this matter, the *Cione* court itself decided whether the arbitration agreement in the U-4 still existed, stating that "the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation, and enforcement of contracts generally." (*Id.* at p. 634.) Unlike the trial court in the matter before us, the *Cione* court

8

concluded that an agreement to arbitrate did exist because the employment agreement did not supersede the U-4. (*Id.* at p. 640.) Still, the underlying point is the same: a court, and not an arbitrator, determines whether an arbitration agreement exists even after it was initially formed.[6]

In trying to recast the issue presented here as one involving "validity" and "severability," defendants rely on the United States Supreme Court's opinions in *Prima Paint, supra,* 388 U.S. 395 and *Buckeye, supra,* 546 U.S. 440. Those cases are distinguishable on their facts because they involved general attacks on the validity of an entire agreement, rather than the interpretation of a contract to determine whether there was, in fact, an agreement to arbitrate.

The issue in *Prima Paint, supra*, 388 U.S. 395, was "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." (*Id.* at p. 402.) The Supreme Court looked to section 4 of the FAA, which states that a court must decide for itself any issue related to "the 'making' of the agreement to arbitrate," and must order arbitration upon being "satisfied that the 'making of the agreement for arbitration . . . is not in issue.' " (*Id.* at p. 403-404; 9 U.S.C. § 4.) The Supreme Court held that, "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (*Prima Paint, supra,* 388 U.S. at pp. 403-404.) Because the fraud claim in *Prima Paint* attacked the contract generally, the Supreme Court determined that the issue should be arbitrated. (*Id.* at p. 404.) Here, unlike in *Prima Paint*, there is no

---

[6] *Dasher v. RBC Bank (USA)* (11th Cir. 2014) 745 F.3d 1111 (*Dasher*), also supports this conclusion. The parties in *Dasher* disputed whether an agreement containing an arbitration clause was superseded by a subsequent agreement that did not contain an arbitration clause. (*Id.* at pp. 1115-1116.) Citing *Granite Rock*, the court in *Dasher* stated that the dispute about whether the first agreement was superseded "is essentially a dispute about whether a 'validly formed . . . agreement' has been made." (*Id.* at p. 1116.)

attack on the validity of the Attorney-Client Agreement based on a legal defense. Instead, the issue is whether an agreement to arbitrate exists at all in light of plaintiff's right to void the agreement.

*Buckeye, supra*, 546 U.S. 440 is distinguishable for the same reason. In *Buckeye*, the respondents opposing arbitration argued that a loan agreement containing arbitration clauses violated state usury laws and was therefore void. (*Id.* at p. 443.) The Supreme Court explained that challenges to the validity of arbitration agreements "can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. [Citation.] The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." (*Id.* at p. 444.) The Supreme Court stated that "Respondents' claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." (*Ibid.*) As such, the Supreme Court held that the arbitration clauses were severable and "enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." (*Id.* at p. 446.) This matter, by contrast, does not involve a validity challenge at all. We agree with the trial court that it involves the fundamental determination of whether there exists an agreement to arbitrate.[7]

---

[7] *Nitro-Lift Technologies, L.L.C. v. Howard* (2012) — U.S. —— [133 S.Ct. 500], is distinguishable for the same reason as *Buckeye*. In *Nitro-Lift*, an employer claimed that two former employees breached non-competition agreements and demanded arbitration pursuant to an arbitration clause in the non-competition agreements. (*Id.* at p. 502.) The employees filed an action in Oklahoma state court "asking the court to declare the noncompetition agreements null and void and to enjoin their enforcement." (*Ibid.*) The trial court dismissed the action, finding that the noncompetition agreements "contained valid arbitration clauses under which an arbitrator, and not the court, must settle the parties' disagreement." (*Ibid.*) The Oklahoma Supreme Court reversed, ruling that the noncompetition agreements were void under state law. (*Ibid.*) The United States Supreme Court reversed the Oklahoma Supreme Court and, citing *Buckeye*, held that "it is for the arbitrator to decide in the first instance whether the covenants not to compete are valid as a matter of applicable state law." (*Id.* at p. 504.)

10

For the reasons we discussed above, it was not error for the trial court to decide for itself whether plaintiff voided the Attorney-Client Agreement. [8] The trial court's conclusion that plaintiff voided the agreement was based on its factual finding that plaintiff's "course of conduct," culminating with his December 2012 letter to defendants stating that he was voiding the Attorney-Client Agreement, established that plaintiff exercised his right to void the entire agreement, including the arbitration clause. Defendants make a half-hearted attempt to challenge this finding in a footnote where, without citation to authority, they state that the trial court's finding was erroneous because "Maxon attempted to void the [Attorney-Client] Agreement in December 2012, over a year after [defendants'] representation had concluded and the contract had been fully performed." This argument is conclusory and not supported by legal authority, and we will not consider it on appeal. (See *Howard v. American Nat. Fire Ins. Co.* (2010)

---

[8] In *Speetjens v. Larson* (S.D. Miss. 2005) 401 F.Supp.2d 600, a federal district court ruled that an arbitrator, and not a court, should decide whether a contingent fee agreement was voidable when it did not comply with the requirements of section 6147. (*Id.* at p. 607.) The client, a California resident, entered into two separate fee agreements with attorneys in Mississippi to commence a legal action in California. (*Id.* at pp. 603-604.) Both agreements had arbitration clauses that, among other things, required the client to arbitrate disputes in Mississippi. (*Id.* at p. 604.) When the client informed the attorneys that she might sue them for legal malpractice, the attorneys, relying on the arbitration clauses in the fee agreements, brought an action in Mississippi federal court to compel arbitration. (*Id.* at pp. 604-605.) Six days later, the client brought a legal malpractice action in California state court. (*Id.* at p. 605.) The attorneys filed a motion to order arbitration and enjoin the California legal malpractice action. (*Ibid.*) In response, the client argued that the attorneys' "failure to comply with various provisions of Cal. Bus. & Prof. Code § 6147 renders the [fee agreements], as a whole, unenforceable." (*Id.* at p. 606.) The court stated that it would apply California law "in deciding whether the Arbitration Agreements are enforceable." (*Ibid.*) The court then held that whether the agreements were voidable "is an issue for an arbitrator to decide" because the client "is attacking the enforceability of the [fee agreements] as a whole, not specifically the arbitration provisions within the [fee agreements]." (*Id.* at p. 607.) *Speetjens* is distinguishable from this matter because the plaintiff in *Speetjens* took the position that the agreements were voidable, whereas in this matter, the trial court found that the Attorney-Client Agreement had, in fact, already been voided. In any event, to the extent *Speetjens* can be read to extend to the circumstances of this case, we decline to follow it for the reasons set forth above.

11

187 Cal.App.4th 498, 523 ["Conclusory assertions of error are ineffective in raising issues on appeal."]; Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate briefs must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].)

In their reply brief, defendants contend that "because the parties' arbitration agreement plainly existed *when the parties' dispute arose*, Maxon's challenge to that agreement has to be arbitrated." Defendants failed to make this argument in their opening brief, nor did they explain why the argument is raised for the first time in reply. On this ground alone, we can dispose of this argument. (See 9 Witkin, Cal. Procedure (5th ed., 2008) Appeal, § 723, p. 790 ["To withhold a point until the closing brief would deprive the respondent of an opportunity to answer it or require the effort and delay of an additional brief by permission. Hence, the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before."].) However, even if we were to entertain this argument, we would reject it because an arbitration agreement can cease to exist even if it was in force at the time a dispute arose.

*Dasher, supra*, 745 F.3d 1111 illustrates this point. In *Dasher*, the trial court determined that a bank account agreement not containing an arbitration provision superseded an earlier agreement that contained an arbitration provision. (*Id.* at p. 1124.) Nevertheless, the party seeking to compel arbitration argued that the arbitration provision in the superseded agreement should be enforced because "the facts giving rise to [the] dispute occurred while the [superseded] Agreement was still effective." (*Ibid.*) The appellate court rejected this argument because "the parties agreed to apply the terms of the [superseding] Agreement retroactively," meaning that "the superseding . . . Agreement governs this dispute even though the facts giving rise to it occurred in the past." (*Ibid.*) The court reasoned that it "should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it," and that "nothing in the FAA prohibits that result." (*Id.* at pp. 1125-1126.) Likewise here, the trial court was simply enforcing the Attorney-Client Agreement. It determined

that the agreement contained a provision that gave plaintiff the option to void it. It then determined that plaintiff had, in fact, exercised his right to void the agreement, "lead[ing] inexorably to the legal conclusion that the attorney-client agreement, including its arbitration provision, no longer exists."

Defendants support their argument by citing to a sentence in *Granite Rock, supra*, 561 U.S. at page 304, where the court stated that "the date on which an agreement was ratified determines the date the agreement was formed, and thus determines whether the agreement's provisions were enforceable during the period relevant to the parties' dispute." According to defendants, this language means that in this case, "the critical timing question is whether the parties had agreed to arbitrate *by the time the dispute arose*." We disagree. The court in *Granite Rock* did not conclude that whether an arbitration agreement can be enforced always depends on whether the agreement existed at the time a dispute arose. In fact, in a footnote immediately following the sentence cited by defendants, the court said that parties may agree to arbitrate a dispute that arose before the parties' agreement to arbitrate. (*Id.* at p. 304, fn. 10 ["Our conclusions about the significance of the CBA's ratification date to the specific arbitrability question before us do not disturb the general rule that parties may agree to arbitrate past disputes or future disputes based on past events."].) And, as *Dasher* notes, not only may parties agree to arbitrate past disputes, but they are free to extinguish an arbitration agreement even if it existed at the time a dispute arose. (*Dasher, supra*, 745 F.3d at pp. 1125-1126.)

Defendants' reliance on our Supreme Court's decision in *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*Saint Agnes*) is also misplaced. The "principal question" in *Saint Agnes* was whether a party waived its contractual right to arbitration. (*Id.* at p. 1195.) The court stated that a party resisting arbitration on grounds of waiver "bears a heavy burden of proof," and that "[g]enerally, the determination of waiver is a question of fact." (*Id.* at pp. 1195-1196.) Applying these principles, the court held that PacifiCare of California (PacifiCare) did not waive its right to compel arbitration against Saint Agnes Medical Center (Saint Agnes), even though PacifiCare had claimed in an earlier-filed lawsuit that the contract containing the

13

arbitration provision it sought to enforce (the June 2000 HSA) was invalid and void. (*Id.* at p. 1200.) Citing *Prima Paint*, the court determined that the arbitration provision was separable and could be enforced notwithstanding PacifiCare's earlier claim that the contract was void. (*Id.* at p. 1199.) Thus, the court concluded that "PacifiCare's legal challenge to the validity of the June 2000 HSA is not inconsistent with an intent to invoke arbitration pursuant to that contract. Contrary to Saint Agnes's contentions, PacifiCare's repudiation as such does not amount to a waiver of its contractual arbitration rights."[9] (*Id.* at p. 1200.) In so holding, the court rejected Saint Agnes's argument that PacifiCare was challenging the existence of the June 2000 HSA by seeking a determination that it was void, since "neither PacifiCare nor Saint Agnes denies its knowing and voluntary agreement to the June 2000 HSA and the terms it contained." (*Id.* at p. 1200.) This case is distinguishable from *Saint Agnes* because it does not involve waiver and, moreover, the trial court here found that plaintiff had exercised a contractual right to void the Attorney-Client Agreement. Once plaintiff exercised that right, the contract no longer existed.[10]

Finding no error, we will affirm the order denying the petition to compel arbitration. As such, we need not address plaintiff's alternative arguments or defendants' argument that if arbitration is compelled, it can only be compelled on an individual (as opposed to class-wide) basis.

## DISPOSITION

The trial court order denying defendants' petition to compel arbitration is affirmed.

---

[9] Saint Agnes raised other grounds to support its argument that PacifiCare waived its right to arbitrate, including that PacifiCare filed an earlier lawsuit, and that Saint Agnes was prejudiced by participating in litigation. (*Saint Agnes, supra*, 31 Cal.4th at pp. 1200, 1203.) The court rejected those arguments, as well. (*Id.* at pp. 1201, 1205.)

[10] Defendants contend that the trial court erred by making an analogy to expired contracts and comparing this case to one where a party seeks to enforce an arbitration clause in a contract that expired by its own terms. Whether the trial court's analogy was apt is beside the point for our purposes. "We do not review the trial court's reasoning, but rather its ruling." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16.)

_____
Miller, J.

We concur:

_____
Kline, P.J.

_____
Richman, J.