Gilbert GOLDSTEIN, Individually, and on Behalf of Those Similarly Situated, Appellees,

v.

DEPOSITORY TRUST COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued June 2, 1998.

Filed Sept. 22, 1998.

Gregg Mashberg, New York City, for appellant.

Stuart H. Savett, Philadelphia, for appellee.

Before KELLY, J., and CERCONE, President Judge Emeritus, and MONTEMURO *, J.

MONTEMURO, Judge:

Appellant, Depository Trust Company ("DTC"), appeals from the July 17, 1997 Order of the Philadelphia Court of Common Pleas denying its petition to compel arbitration. For the reasons set forth below, we affirm.

* Retired Justice assigned to Superior Court.

This is a class action suit arising from the tender offer and sale of Pillsbury Company common stock in 1989. In January of 1989, Grand Metropolitan PLC ("Grand Met"), through its subsidiary, Wendell Investments Ltd. ("Wendell"), completed a tender offer to acquire all of the 85.8 million shares of outstanding common stock of Pillsbury at $66 per share. Following the completion of the tender offer, approximately 98.7% of the outstanding shares were accepted for payment by Wendell for an estimated total value of $5.7 billion.

The class members of this suit, represented by Appellee Goldstein, were share owners who, pursuant to the offer, tendered their stock through their own brokers or banks to DTC. DTC is a securities depository and national clearinghouse for the settlement of trades in corporate and municipal securities; it provides securities custody services for participating banks and brokerage houses ("Participants"). In this capacity, DTC facilitated the transaction between the stock holders and Grand Met by holding the Pillsbury stock that was tendered by the Participants, then tendering the stock to Grand Met through its subsidiary, Willard, and ultimately receiving payment from Grand Met on Friday, January 6, 1989 for the tendered shares. On Monday, January 9, 1989, DTC distributed the funds received from Grand Met for payment of the shares to the accounts of the Participants in proportion to the amount of Pillsbury stock tendered by each Participant.

On February 10, 1989, DTC distributed all of the interest earned on the funds from January 6, 1989, and all of the interest earned on such interest through January 31, 1989, to the accounts of the Participants, less 15% which DTC retained and deposited into a special reserve account, the "Reorganization Contingency Reserve." Funds from this Reserve Account are refunded *pro rata* to the Participants at the conclusion of each calendar year in proportion to the funds allocated to them during the year for their reorganization activity. The Participants receive a refund from this Account only after DTC deducts any losses it incurred during the year in connection with a reorganization. In the instant matter, DTC did in fact distribute the outstanding balance of the 1989 Reorganization Contingency Reserve to its Participants.

The Amended Complaint alleges that DTC apportioned the interest from the Pillsbury transaction to the Participants' accounts together with other interest due the Participants "without segregating such interest as [is] attributable to the Grand Met tender offer for Pillsbury. By doing so, DTC made it virtually impossible for the Participants to credit their clients – plaintiff and the class – with the interest attributable to the Pillsbury tender offer and, accordingly, the Participants have not done so." (Amended Complaint at ¶ 20). Further, the complaint alleges that the 15% interest which was retained by DTC and deposited into the Reorganization Contingency Reserve Account "was not segregated so that it could be attributed to interest on the funds received in payment for Pillsbury stock .... [Therefore,] any refund which Participants receive from [this Account] cannot be attributable to the Pillsbury tender offer and, therefore cannot and will not be distributed to the Participants' clients – plaintiff and the class." (*Id.* at ¶ 21). Accordingly, the class members assert claims against DTC for breach of fiduciary duty, negligence, contractual liability for third party beneficiaries, negligence of a joint venturer, and aiding and abetting the breach of fiduciary duty by the Participants. The class members seek to recover "the interest ... on the funds which [they] belatedly received in exchange for their Pillsbury shares as a result of DTC's conduct in preventing the receipt of such interest by the class." (Appellees' Brief at 2).[1]

DTC filed preliminary objections to the Amended Complaint on February 2, 1990.[2]

---

[1]. Appellees are seeking an estimated $4,216,438 in interest in addition to interest on this amount and punitive damages. (Appellees' Brief at 2 n. 1).

[2]. The original complaint was filed January 19, 1989. DTC's preliminary objections to this complaint were overruled and it was ordered to file an answer. However, upon stipulation and con-

One month later, on or about March 5, 1990, DTC filed a petition to compel arbitration and stay proceedings.[3] After the filing of the petition, however, there occurred an unexplained lack of docket activity for over seven years until July 16, 1997, when the trial court entered an Order overruling DTC's preliminary objections and denying its petition to compel arbitration. A timely notice of appeal was filed August 15, 1997 challenging that portion of the July 16th Order which denied DTC's petition to compel arbitration.[4]

Preliminarily, Appellees claim that the July 16th Order was not final and appealable, and, therefore, this appeal should be dismissed as interlocutory. We disagree.

■ Pennsylvania Rule of Appellate Procedure 311 provides that an interlocutory appeal may be taken as of right from any order which is made appealable by statute. Pa.R.A.P. 311(a)(8). The Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301 *et seq.*, states that an appeal may be taken from "[a] court order denying an application to compel arbitration...." 42 Pa.C.S.A. § 7320(a)(1). Therefore, because the order denying DTC's petition to compel arbitration has been made appealable by statute, the instant matter is properly before this Court. *Goral v. Fox*, 453 Pa.Super. 316, 320 n. 1, 683 A.2d 931, 933 n. 1 (1996). We note that Appellees' argument for dismissal on the grounds that DTC is not a party to the alleged arbitration agreement and therefore, cannot compel arbitration between signatories, addresses the substance of DTC's petition and does not implicate the appealability of the Order.

DTC raises two claims for our review:

1. Is plaintiff obligated to arbitrate with his broker, Prudential Bache Securities, Inc., claims that arise out of or relate to his account agreement, which contains an arbitration provision?

2. Are plaintiff's common law claims preempted by federal securities laws and regulations?

(DTC's Brief at 4).

■ We will address these issues in reverse order, first noting that DTC's second issue regarding federal preemption is not properly before this Court. The defense of preemption was raised initially in DTC's Answer and New Matter to the Amended Complaint which was filed on November 17, 1997, four months after the denial of DTC's petition to compel arbitration. As noted above, the only appealable matter before this Court concerns DTC's petition to compel arbitration, and, as such, our review is confined to the narrow issue of whether the petition was properly denied. *See Shadduck v. Kaclik*, 713 A.2d 635 (Pa.Super.1998)(holding that where appellant's preliminary objections both in nature of demurrer and in nature of motion to compel arbitration were denied, appellate review is limited to that portion of the court's order which denied the motion to compel arbitration; the other issues are not ripe for review.). *See also Messa v. State Farm Ins. Co.*, 433 Pa.Super. 594, 595–97, 641 A.2d 1167, 1168 (1994)(stating that when presented with a petition to compel arbitration, the trial court is limited to determining whether an agreement to arbitrate exists and if the dispute falls within the provision; the court is not free to examine the merits of the underlying claims or defenses.)

■ Our review of DTC's claim of the improper denial of its petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether it abused its discretion in denying the petition. *Goral*,

sent of the parties, an Amended Complaint was filed on January 10, 1990.

**3.** Although the filing of DTC's petition to compel arbitration is not included in the docket entries contained in the certified record, the record includes a time-stamped copy of the petition. We note, however, that the time stamp on the cover sheet of the petition is barely visible, thus we are able to decipher only "MAR 1990." Nevertheless, because the date of filing is not at issue and other correspondence in the record indicates that the filing occurred on or about March 5, 1990, we will accept this as the file date for DTC's petition to compel arbitration.

**4.** Recognizing the interlocutory nature of that portion of the July 16th Order which overruled its preliminary objections, DTC requested that the court certify the issue for appeal. However, the motion for certification was denied by Order dated January 12, 1998.

453 Pa.Super. at 320–22, 683 A.2d at 933. Section 7304 of the Uniform Arbitration Act governs the procedure by which arbitration may be compelled:

On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

42 Pa.C.S.A. § 7304(a). Thus, "[i]f a valid arbitration agreement exists between the parties and appellant['s] claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Messa,* 433 Pa.Super. at 600, 641 A.2d at 1170 (1994).

■ In its petition to compel arbitration, DTC ignores the class action character of the suit.[5] It denominates class representative Goldstein as the sole plaintiff, and claims that pursuant to a contract with his broker Prudential–Bache Securities ("Pru–Bache"), Goldstein is obligated to submit to arbitration all claims arising from the sale of his Pillsbury stock by Pru–Bache prior to pursuing any claim against DTC arising from the Pillsbury transaction. DTC contends that this is necessary because "Plaintiff's claims arise exclusively from his account agreement with Pru–Bache." (DTC's Brief at 19). However, we find this argument disingenuous at best. Throughout its petition to compel arbitration and its appellate brief, DTC seeks to mischaracterize the underlying action as a suit between Goldstein and DTC to which Pru–Bache, as Goldstein's broker in the Pillsbury transaction, is an indispensable party.[6] In reality, this is a class action suit against DTC with Goldstein acting as representative of a class consisting of numerous plaintiffs who, through their individual brokers or banks, i.e., DTC Participants, tendered their Pillsbury stock to Grand Met through DTC. The size of the class involved in the underlying suit is illustrated by the fact that approximately 85 million shares of Pillsbury stock were tendered by the class members to Grand Met through approximately 300 Participant brokers, banks, etc.

A review of the Amended Complaint (hereinafter "complaint") clearly reveals that the claims advanced challenge the procedures DTC employed in crediting and allocating interest earned on the funds received from the sale of the Pillsbury stock. The complaint contends that the actions of DTC in this regard have worked to the detriment of the Participants' clients, i.e., the class members. The complaint never alleges any dispute against individual Participants such as Pru–Bache. Rather, to the extent that this class action suit involves the Participants, it is as negligent joint venturers with DTC, with DTC being jointly and severally liable for the damage sustained. As is its option, the class has chosen to sue DTC specifically for its actions involving the distribution of funds resulting from the Pillsbury transaction. Since this is not a suit by Goldstein individually against DTC, and the claims asserted in the complaint raise a direct challenge to the actions performed by DTC,

---

5. From the scant record provided to this Court by Appellant, we are unable to determine with certainty whether this matter was certified as a class action. The docket entries reveal that on August 16, 1989, an order was entered providing, in pertinent part:

the above captioned case shall be assigned to the Honorable Eugene Maier for determination of Certification of Class Action in accordance with Pa. R.C.P. 1701, *ex seq.* If so certified, Judge Eugene Maier will preside for all othere [sic] pre-trial, trial and post-trial purposes. If certification is denied, the case will be returned to the Office of Civil Listings to proceed in the usual course.

(Order, dated 8/10/89). There is no other docket entry or record evidence concerning the class action status of this matter. We note, however, that the Amended Complaint and other relevant pleadings were captioned and filed as a class action suit, and Judge Maier has presided over the pre-trial proceedings, including the disposition of the instant petition to compel arbitration. Thus, without any evidence to the contrary, we must consider this matter as a class action.

6. We note, however, that at no time has DTC sought to join Pru–Bache as a party defendant.

Goldstein's alleged agreement with Pru–Bache is irrelevant. Thus, because DTC's petition to compel arbitration is based entirely on the agreement alleged to exist between Goldstein and Pru–Bache, its petition must fail.

◼ Moreover, assuming *arguendo* there was any merit to DTC's erroneous contention that all of the underlying claims arise from Goldstein's brokerage agreement with Pru–Bache, DTC has failed to offer evidence in the form of a signed copy of the alleged agreement between these parties. Rather, attached to its petition to compel arbitration, DTC provides a copy of an unsigned, Pru–Bache "Client's Agreement," and argues that because this is Pru–Bache's standard client agreement, it must be the same one which governs the brokerage relationship between Goldstein and Pru–Bache and thus the course of this action. We remind DTC that under § 7304 of the Uniform Arbitration Act, it is assigned the burden of demonstrating that a valid agreement to arbitrate exists between the parties, and that the dispute is within the scope of the agreement. 42 Pa. C.S.A. § 7304(a); *Messa, supra.* Here, however, although the sole basis of DTC's petition is an agreement between Pru–Bache and Goldstein, there is no evidence of record that any such agreement exists. Thus, we are unable to determine even if there is an agreement between the parties much less whether the claims at issue are within its scope.

◼ Further, assuming that an arbitration agreement does exist between Goldstein and Pru–Bache, we would nevertheless conclude that DTC's attempt to assert rights under an agreement to which it is not a party must fail. Our research has failed to reveal any authority of this Commonwealth which grants DTC, as a non-signatory to an arbitration agreement, the right to compel arbitration between the two signatories, Pru–Bache and Goldstein, particularly given that Pru–Bache is not a party to the underlying litigation. The cases relied upon by DTC to support its novel proposition are from various federal courts interpreting the Federal Arbitration Act, and, therefore, are not binding authority. Moreover, even if the cited cases were binding on this Court, none stands for the proposition which DTC is asserting. *See, e.g., Roberson v. The Money Tree of Alabama*, 954 F.Supp. 1519 (M.D.Ala. 1997) (nonsignatory defendant sought to compel arbitration with signatory plaintiff after signatory defendants were dismissed from case; petition to compel arbitration granted since claims against nonsignatory defendant arose from and related specifically to the contract between plaintiff and signatory defendants); *Pritzker v. Merrill Lynch*, 7 F.3d 1110 (3d Cir.1993)(holding claims of signatory plaintiff against non-signatory defendants must be arbitrated based on agency relationship between signatory and non-signatory defendants). Here, Pru–Bache is neither a party to the underlying suit nor is there any allegation that it is an agent or principal of DTC. Thus, these cases are both non-binding and inapposite.

For the foregoing reasons, we affirm that portion of the July 16, 1997 order denying DTC's petition to compel arbitration.

Order affirmed.