J-A15010-15

2015 PA Super 246

| | |
|---|---|
| JENNIFER COLLIER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NATIONAL PENN BANK, NATIONAL PENN BANCSHARES, INC. AND KNBT BANCORP, INC., | |
| Appellant | No. 976 EDA 2014 |

Appeal from the Order Entered February 18, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term, 2012 No. 01036

BEFORE:  BOWES, MUNDY, AND FITZGERALD* JJ.

OPINION BY BOWES, J.:                      **FILED NOVEMBER 24, 2015**

National Penn Bank, National Penn Bancshares, Inc., and KNBT Bancorp, Inc. (collectively "National Penn") appeal from the February 18, 2014 order overruling their preliminary objections in the nature of a petition to compel arbitration and a demurrer.  After careful review, we affirm in part, and quash in part.

Jennifer Collier commenced this class action in the Court of Common Pleas of Philadelphia against National Penn on behalf of herself and others similarly situated.  The gist of her complaint is that National Penn, in breach of a 2010 Account Agreement, improperly assessed overdraft fees when her account, and the accounts of those similarly situated, were not overdrawn.

_____
* Former Justice specially assigned to the Superior Court.

National Penn countered that Ms. Collier's overdraft fees were assessed on a checking account governed by a 2008 Agreement that used "available balance" rather than "ledger balance" when determining whether such fees should be assessed. It further averred that, since that Agreement contains an agreement to arbitrate disputes, this controversy should be referred to arbitration.

National Penn removed the action to the United States District Court for the Eastern District of Pennsylvania, but that court granted Ms. Collier's motion for remand. National Penn then filed preliminary objections in the nature of a petition to compel arbitration and a demurrer premised on preemption of all claims by federal banking law. All preliminary objections were overruled by order dated February 18, 2014. In denying the preliminary objections seeking to compel arbitration, the trial court found there was no agreement to arbitrate. In overruling the demurrer, the court rejected preemption.

National Penn appealed. In its Pa.R.A.P. 1925(b) statement, it alleged error in the court's refusal to enforce the arbitration agreement and in finding that Ms. Collins' state law breach of contract, conversion, unjust enrichment, and Pa. Unfair Trade Practices and Consumer Protection Law claims were not pre-empted by the National Bank Act, 12 U.S.C. § 21 *et seq*. In its Rule 1925(a) opinion, the trial court noted that only that portion of its order denying the preliminary objections in the nature of a petition to

compel arbitration was appealable. *Taylor Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 636 (Pa.Super. 1998); *see also* Pa.R.A.P. 311(a)(8) and 42 Pa.C.S. § 7320 *et seq*. The court opined further that its order overruling the demurrer based on preemption was neither an appealable interlocutory order nor a collateral order, and thus, not subject to appellate review.

On appeal, National Penn presents two issues for our review:

1. Whether the trial court erred in denying National Penn's preliminary objection in the nature of a motion to compel arbitration and for a stay of the litigation pursuant to the Pennsylvania Arbitration Act and/or Federal Arbitration Act because the written account agreement applicable to Ms. Collier's bank account referenced in the Complaint contains an enforceable arbitration agreement and all of the claims in the Complaint fall with the scope of the arbitration agreement?

2. Whether the trial court erred in denying National Penn's preliminary objection in the nature of a demurrer to all claims in the Complaint based on federal preemption because all of Ms. Collier's claims are preempted by the National Bank Act, 12 U.S.C. § 21 et seq., and federal regulations promulgated by the Office of the Comptroller of the Currency?

Appellant's brief at 6-7.

Our jurisdiction to review the propriety of the trial court's order overruling preliminary objections in the nature of a motion to compel arbitration is conferred by Pa.R.A.P. 311(a)(8), which provides that an interlocutory appeal may be taken as of right from any order made appealable by statute, and by 42 Pa.C.S. § 7320(a)(1) of the Uniform Arbitration Act, which authorizes an appeal from "[a] court order denying an

application to compel arbitration." We review such a claim "for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." *Taylor v. Extendicare Health Facilities*, *Inc.*, 113 A.3d 317, 320 (Pa.Super. 2015). We employ a two-part test to determine whether arbitration was proper. First, we ascertain whether a valid agreement to arbitrate exists. If so, we examine whether the dispute is within the scope of the agreement. *Pisano v. Extendicare Homes,* *Inc.*, 77 A.3d 651, 654 (Pa.Super. 2013); *see also Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012).

National Penn contends that the trial court's denial of its petition to compel arbitration was based on an incorrect finding that the 2010 Account Agreement, rather than the 2008 Account Agreement, controlled. It argues that the finding was unsupported by the evidence and that the court failed to credit the unrefuted affidavit of Carol Franklin.[1] Ms. Franklin stated therein that the 2008 account agreement containing the arbitration clause was sent to Ms. Collier in 2008 after National Penn acquired KNBT where Ms. Collier had previously maintained an account. The 2010 Agreement, according to Ms. Franklin, was sent to Ms. Collier in connection with a second account

---

[1] The trial court characterized the affidavit as "bald statements" and "nothing more than self-serving declarations" which were "in direct contravention of the plain and unambiguous language" of the deposit agreements.

- 4 -

that she opened in 2010, and Ms. Franklin maintained that it did not apply to or supersede the 2008 Agreement that governed the first checking account which incurred the overdraft fees. National Penn contends that since the 2010 Agreement contains no language suggesting that it was intended to supersede the 2008 Agreement, the court should have accepted the unrefuted affidavit as true. *Id*. Additionally, National Penn relies upon language in both Agreements referring to the operation of "this account" as indicating that there were separate agreements for Ms. Collier's two accounts and contends that the trial court incorrectly assumed that there is only one account agreement per customer.

Ms. Collier based her claims on National Penn's 2010 Personal Business Deposit and Electronic Banking Services Agreement and Disclosure, effective March of 2010. It is her position that the 2010 Agreement expressly superseded the earlier 2008 Agreement, and the trial court properly found no valid agreement to arbitrate as the 2010 Agreement did not contain an arbitration clause.[2] She relies upon two federal decisions holding that a later account agreement superseded an earlier one, and that, by continuing to use the account, she indicated her intention to be bound by the later

---

[2] Ms. Collier also offered additional bases to affirm the trial court's finding that there is no valid agreement to arbitrate based on the 2008 agreement, among them, that the sole arbitrator designated in the agreement is unavailable and that the arbitration clause is unconscionable and illusory.

agreement. In **Dottore v. Huntingdon**, 2010 WL 3861010 (N.D. Ohio 2010), *affirmed* 480 Fed Appx. 351 (6th Cir. 2012), the customer and the bank operated for two years under a 2003 agreement that contained an arbitration clause. The bank provided a new agreement in 2005, entitled "Your Deposit Account Terms and Conditions," which did not contain an arbitration clause. Following a dispute, the customer filed suit and the bank moved to compel arbitration pursuant to the earlier 2003 agreement. The court denied the motion, concluding that the later agreement was a new account agreement and did not include an agreement to arbitrate. The court of appeals affirmed, agreeing that the 2005 agreement controlled. It noted that the 2005 agreement was comprehensive and did not incorporate any other documents by reference. Since it did not require arbitration, the court found no agreement to arbitrate.

The Eleventh Circuit Court of Appeals reached a similar result in **Dasher v. RBC Bank(USA)**, 745 F.3d 1111 (11th Cir. 2014), finding that a later version of a deposit agreement, which was expressly contemplated under a former agreement, superseded all prior versions. The effect of that holding was to render the prior agreement's arbitration clause ineffective, "even if the superseding agreement is silent on arbitration." **Id**. at 1122.

The trial court herein reviewed the agreements at issue and determined that the parties expressly intended that the March 2010 Agreement control. For the reasons that follow, we agree. The 2008

Agreement is entitled KNTB Deposit and Electronic Banking Services Agreement and Disclosure Booklet and purports to cover National Penn affiliates, including KNBT, and subsidiaries, all of which are listed in the agreement. *Id*. at 5. The Agreement does not reference any particular account and speaks generally about many types of accounts, including but not limited to, joint accounts, and power of attorney, custodial, fiduciary, and corporate accounts. The 2008 Agreement provides that

> This account is subject to charges, interest rates, and minimum balance requirements established from time to time by us. We may change such applicable charges interest rates, and minimum balance requirements, and any other account terms, features, or conditions, at any time after such notice, if any, as is required by law.

2008 Agreement at 9. Additionally, the 2008 Agreement contains an agreement to arbitrate all disputes under the Code of Procedure of the National Arbitration Forum (NAF), and provides that it is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. *Id*. at 12.

Similarly, the 2010 Agreement is a form that is not account-specific. It purports to be a National Penn agreement but identifies KNBT as an affiliate of National Penn. 2010 Agreement at 6. It addresses the same subject matter as the 2008 Agreement and is similarly comprehensive in its terms. The 2010 Agreement provides that the account

> is subject to charges, interest rates, and minimum balance requirements established from time to time by us. **We reserve the right to change the terms of this Agreement or change the terms of your account at any time.** . . . . where

- 7 -

applicable law permits, we can notify you of the changes by posting a new version of this Agreement, or a Notice of Change to Accounts, in our offices. **Your continued use of the account following the effective date of any such change indicates your intention to be bound by this Agreement, as amended.**

2010 Agreement at 9 (emphases added). The 2010 Agreement, however, does not contain an arbitration provision. It provides that disputes "shall be resolved by the Bank or by litigation through a court and have a judge or jury decide the dispute." 2010 Agreement at 13.

National Penn concedes that "[i]f the 2010 Agreement stated that it applied to all of Ms. Collier's accounts, the result might be different." Appellant's brief at 14. We believe the following provision does just that. In the "Agreement to Settle Disputes" provision of the 2010 Agreement, the parties agree that

> **all claims, disputes or controversies**. . . . **arising from or related to your account**, the account agreement, the transactions on the account **or any other account you previously, now or may later have with us**, . . . .shall be resolved by the Bank or through litigation through a court . . ."

*Id*. at 12-13 (emphases added). We conclude that the plain language of the 2010 Agreement clearly indicates that it was intended to supersede the 2008 Agreement, certainly with regard to judicial resolution of disputes in lieu of arbitration, which is the issue before us. Hence, there is no agreement to arbitrate.

Prior to reaching National Penn's second issue, we must first determine whether the issue is properly before us. As Ms. Collier correctly points out, the statutory authority authorizing an interlocutory appeal of the denial of arbitration is limited to that issue. She also correctly maintains that in order to appeal the overruling of the demurrer premised on preemption, there must be an independent basis for this Court's jurisdiction. **See Rae v. Pennsylvania Funeral Directors Ass'n**, 977 A.2d 1121, 1130 (Pa. 2009) (noting the collateral order test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313). The trial court implicitly agreed with that analysis as it urged us to quash the appeal from the overruling of preliminary objections in the nature of a demurrer as interlocutory. **See F.D.P. v. Ferrara**, 804 A.2d 1221 (Pa.Super. 2002). Since National Penn did not seek trial court certification for an interlocutory appeal by permission, Ms. Collier echoes the trial court's position that the only possible basis for our jurisdiction is the collateral order doctrine and that the federal preemption issue did not meet the requirements for collateral order review pursuant to Pa.R.A.P. 313(b).

Whether an order is appealable as a collateral order is a question of law; as such, our standard of review is *de novo* and our scope of review is plenary. **Rae**, **supra** at 1126 n.8. Moreover, where the issue presented is a question of law as opposed to a question of fact, an appellant is entitled to

review under the collateral order doctrine; however, if a question of fact is presented, appellate jurisdiction does not exist. ***Aubrey v. Precision Airmotive LLC***, 7 A.3d 256, 262 (Pa.Super. 2010).

Pa.R.A.P. 313(b) provides that a collateral order is one (1) separable from, and collateral to the main cause of action; (2) that involves a right that is too important to be denied review; and (3) presents a question such that if review were postponed until final judgment in the case, the claim would be irreparably lost. ***See Vaccone v. Syken***, 899 A.2d 1103, 1106 (Pa. 2006). National Penn argues that under ***Hassett v. Defoe***, 74 A.3d 202 (Pa.Super. 2013), ***Pridgen v. Parker Hannifin Corp.***, 905 A.2d 422 (Pa. 2006) (summary judgment), and ***Yorty v PJM Interconnection, L.L.C.***, 79 A.3d 655 (Pa.Super. 2013) (summary judgment), collateral order review here is proper.

In ***Hassett***, the manufacturers of the generic version of Reglan, metoclopramide, maintained that all state negligence claims were essentially failure to warn claims pre-empted by the United States Supreme Court's decision in ***PLIVA, Inc. v. Mensing***, 131 S.Ct. 2567 (2011). The Court held therein that, under federal law, generic drug manufacturers no longer had the ability to unilaterally change their products' labels. Hence, the generic manufacturers argued that, to the extent that state law required them to provide stronger or different warnings to avoid liability, state law conflicted with federal law and was pre-empted. The effect of preemption

was to render generic manufacturers essentially immune from liability under state law for failure to warn.

This Court found that the nature of the allegations of the complaint controlled and no examination of the merits of the underlying claims or resolution of factual disputes was necessary. Thus, the preemption issue as phrased was sufficiently separable. Furthermore, we found the issue implicated the Hatch-Waxman Act's policy of promoting access to low-cost generic drug alternatives and state tort law concerns, rights too important to deny review. Moreover, more than two thousand cases involving the issue were pending at the time in Philadelphia County and we were cognizant of the defense costs that generic drug manufacturers would incur. Thus, the test was satisfied for application of the collateral order jurisdiction.

*Pridgen* involved an appeal from the denial of summary judgment in a products liability action. The defense maintained that the eighteen-year statute of repose in the General Aviation Revitalization Act of 1994, 49 U.S.C. § 40101, barred the action. The parties had engaged in discovery, the relevant facts were agreed upon, and the legal issue was determinative of whether the defendant was immune from suit. The Supreme Court found initially that the central question, as framed, was consistent with application of the collateral order doctrine to a summary judgment order based on a legal rather than factual determination. *Pridgen*, *supra* at 432. Furthermore, it met the three-pronged test for application of the collateral

- 11 -

order doctrine. The application of the statutory provision to manufacturers like the defendant was "conceptually and factually distinct from the merits" of the underlying products claim. *Id*. at 433. Our High Court conceded that while the claim was not "fully on par with immunities and constitutional entitlements," the federal interests underpinning the statute were "sufficiently important to justify the intervention of appellate courts in product liability cases in furtherance of the policy of cost control." *Id*. With regard to the irreparable loss prong, the Court found that the substantial cost of defending the complex litigation at trial was sufficient.

In *Yorty*, we found no factual dispute. The issue was a legal one: whether a federal tariff operated to provide immunity from negligence. We found the issue, which involved a preemption analysis, to be factually distinct from the proof of the elements of negligence in the underlying action, as was the statute of repose in *Pridgen*. The immunity claim was of paramount importance in the regulation and cost of electricity. Finally, the cost of defending such complex litigation at a trial was the type of irreparable loss recognized in *Pridgen*.

Ms. Collier relies upon our decisions in *In re Reglan Litigation*, 72 A.3d 696 (Pa.Super. 2013), and *Goldstein v. Depository Trust Co.*, 717 A.2d 1063 (Pa.Super. 1998), in support of her position that the preemption issue is not separable from and collateral to the underlying case. *Goldstein* was a class action by shareholders against a securities depository for breach

of fiduciary duty, negligence, contractual liability for third party beneficiaries, and related claims. When the trial court overruled the defendant's preliminary objections and denied its petition for arbitration, the defendant appealed. On appeal, the defendant challenged not only the arbitration ruling but sought to litigate whether the claims were preempted by federal securities law and regulations, a defense it had subsequently asserted in new matter. We held that the arbitration decision was an appealable interlocutory order under Pa.R.A.P. 311 and the Uniform Arbitration Act, but that the preemption defense, pled as new matter four months after the petition to compel arbitration had been denied, was not properly before us. **Goldstein**, however, did not address the question before us, *i.e.*, whether the preemption issue is reviewable as a collateral order.

In **In re Reglan Litigation**, 72 A.3d 696 (Pa.Super. 2013), Wyeth filed preliminary objections seeking dismissal of all claims against it arising after 2001 on preemption grounds. It maintained that, since it transferred its rights as the name-brand manufacturer of Reglan to another entity in 2001, it was not liable for post-2001 claims under **PLIVA, Inc. v. Mensing**, 131 S.Ct. 2567 (2011) (federal law precluded generic drug manufacturers from unilaterally changing their labels to strengthen a warning, which was the duty imposed in state failure-to-warn cases). It premised jurisdiction of its interlocutory appeal on the collateral order doctrine. This Court declined to exercise collateral order jurisdiction under Pa.R.A.P. 313(b) and quashed

Wyeth's appeal. We found that since Wyeth retained some control over the name-brand drug after 2001, the nature and extent of which was disputed, this was not a case involving the application of clearly established law to a given set of facts. Additionally, Wyeth did not meet the irreparable harm prong of the collateral order test because it acknowledged that, regardless of our decision, it would remain a party in the ongoing litigation due to its pre-2001 status as a name-brand manufacturer.

Here, as in *In re Reglan Litigation*, there are unresolved factual issues. Furthermore, we do not view Ms. Collier's claim as a challenge to National Penn's power to regulate and control its deposits, but rather as a contractual issue. In asserting collateral order jurisdiction over its preemption claim, National Penn relies upon cases involving immunity defenses or instances when federal preemption would render a defendant essentially immune from liability. Glaringly absent herein is any suggestion that application of federal law would render National Penn immune from liability premised on violations of state contract and tort law. Quite the contrary, National Penn's contention that it is "subject to state law only insofar as the NBA [National Bank Act] and OCC [Office of the Comptroller of the Currency] regulations expressly direct that result," Appellant's Reply Brief at 22, implies that the NBA and OCC were not intended to pre-empt the entire field. Thus, preemption would necessarily have to be based on some type of conflict between federal and state law. *See Hassett*, *supra*

(involving impossibility preemption, the type of implied conflict preemption that arises when it is impossible to comply with both federal and state law). Since the case is only at the preliminary objection stage, the record is not sufficiently developed to permit us to discern whether there is any conflict between federal and state law. **See Rae**, **supra** (recognizing that piecemeal review undermines judicial accuracy as courts are more likely to correctly decide a question on a fully developed record).

While the preemption issue is arguably separable from the underlying merits, National Penn has not satisfied the second two prongs of the collateral order test. This case does not involve state regulation of federal banks or a challenge to federal banking regulations. The fundamental issue is one of contract interpretation, and we see no compelling public policy concerns that that are too important to be denied review at this preliminary stage of the proceedings. Nor do we find that the prospect of defending a class action alone constitutes the type of irreparable loss required for the third prong. Presumably, National Penn could revisit the preemption issue at the summary judgment stage and certainly following final judgment.

The order overruling preliminary objections in the nature of a petition to compel arbitration is affirmed. Having concluded that we have no jurisdiction to review the trial court's order overruling the demurrer based on federal preemption, the appeal from that portion of the trial court's order is quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/24/2015</u>