J-A26007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HIGHMARK, INC., AND KEYSTONE HEALTH PLAN WEST, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| UPMC, UPMC BEDFORD, UPMC EAST, UPMC HORIZON, UPMC MCKEESPORT, UPMC NORTHWEST, UPMC PASSAVANT, UPMC PRESBYTERIAN-SHADYSIDE, MAGEE WOMEN'S-HOSPITAL OF UPMC, HEMATOLOGY ONCOLOGY ASSOCIATION, ONCOLOGY-HEMATOLOGY ASSOCIATION, INC., AND SEWICKLEY MEDICAL ONCOLOGY HEMATOLOGY GROUP – UPCI, | |
| Appellants | No. 557 WDA 2015 |

Appeal from the Order Entered March 24, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-14-015441

BEFORE: BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 02, 2016**

Appellants, UPMC, UPMC Bedford, UPMC East, UPMC Horizon, UPMC McKeesport, UPMC Northwest, UPMC Passavant, UPMC Presbyterian-Shadyside, Magee Women's-Hospital of UPMC, Hematology Oncology Association ("HOA"), Oncology-Hematology Association, Inc. ("OHA"), and Sewickley Medical Oncology Hematology Group–UPCI ("SMOH") (collectively referred to herein as "UPMC"), appeal from the trial court's March 24, 2015

order overruling their preliminary objections based on arbitrability and denying their motion to compel arbitration. After careful review, we affirm.

We briefly provide some background information that we find pertinent to understanding the issues raised in this appeal. UPMC, a not-for-profit corporation with its principal place of business in Pittsburgh, Pennsylvania, owns numerous hospitals, including those named in this lawsuit: UPMC Bedford, UPMC East, UPMC Horizon, UPMC McKeesport, UPMC Northwest, UPMC Passavant, UPMC Presbyterian-Shadyside, and Magee Women's-Hospital of UPMC (collectively "UPMC Hospitals"). In addition, it is affiliated with multiple physician groups, some of which are also involved in this lawsuit: HOA, OHA, and SMOH (collectively "Physician Group Practices"). Appellees, Highmark, Inc. and Keystone Health Plan West, Inc. (collectively referred to herein as "Highmark"), are organizations that offer non-profit hospital and professional health services plans. UPMC and Highmark had multiple commercial contracts with one another, which expired at the end of 2014. UPMC Brief's at 8; Highmark's Brief at 5. Highmark sought an extension of these contracts, but UPMC declined to extend them. *Id.*

In the years leading up to the expiration of the parties' commercial contracts, the parties have clashed over UPMC's billing practices and Highmark's reimbursement rates for oncology care. According to Highmark, UPMC unjustifiably overbilled for their oncology drugs and services. Specifically, Highmark alleges that "[a]round August 2010, UPMC began charging Highmark customers significantly higher outpatient hospital rates

for oncology drugs and services that had been previously rendered at lower physician rates—even though the same services were rendered at the same location as they had been before." Highmark's Brief at 10.

As a result of UPMC's alleged overbilling, Highmark changed its fee schedules for oncology services and drugs on April 1, 2014. *Id.* at 4. Highmark says these "changes were intended to offset the billing practices implemented by a number of UPMC hospitals and physician group practices that had artificially inflated the cost of oncology drugs…." *Id.* at 4-5. In turn, UPMC suffered financial losses, claiming that "Highmark's unilateral cuts reduced reimbursement payments to UPMC by about $200 million annually." UPMC's Brief at 9. Further, it "contended that Highmark's cuts were a clear breach of the parties' contracts and taken in retaliation for UPMC ending the parties' existing contracts." *Id.*

After Highmark reduced its oncology reimbursement rates in April 2014, UPMC filed a demand for arbitration. Highmark's Brief at 5; UPMC's Brief at 10. Through arbitration, UPMC "sought to restore the parties' pre-April 1 oncology rates, and require Highmark to pay the reimbursement rates set forth in the parties' contracts." UPMC's Brief at 10 (internal quotations omitted).[1]

_____

[1] We acknowledge that this initial arbitration of Highmark's oncology reimbursement rates has been enjoined, but subsequent arbitrations of this same issue have ensued. *See* Highmark's Brief at 9-10; UPMC's Brief at 13-15.

While that arbitration was pending, UPMC, Highmark, and various representatives from the Commonwealth began preparing a transition plan to address the expiration of the parties' commercial contracts at the end of 2014, which led to the execution of the Consent Decrees asserted by UPMC as the basis for compelling arbitration in this case.[2] In its brief, UPMC describes the impetus for the Consent Decrees, explaining:

> [] UPMC, Highmark, and certain Pennsylvania state officials discussed a transition plan to deal with expiration of the parties' commercial contracts at the end of 2014. These discussions culminated on June 27, 2014, when UPMC and Highmark each executed mirror-image Consent Decrees with those officials. The Commonwealth Court adopted and entered the Consent Decrees as Orders on July 1, 2014.
>
> The purpose of the Consent Decrees was to "lessen[] the anxiety of Highmark subscribers by providing certainty as to what would occur during transitional periods and provid[e] a basis by which Highmark subscribers … could make informed decisions regarding their healthcare."

UPMC's Brief at 11 (internal citations and footnote omitted). Highmark similarly explained that "[t]he Consent Decrees were designed both in express terms and in concept to protect the public by ensuring continued

---

[2] Our Supreme Court has explained:

> A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties - a contract binding the parties thereto to the terms thereof[.] As a contract, the court, in the absence of fraud, accident or mistake, had neither the power nor the authority to modify or vary the terms set forth....

*Lower Frederick Township v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988) (internal citations omitted).

access to UPMC facilities so that vulnerable members of the public would not experience immediate disruptions in their medical care." Highmark's Brief at 6. It further elaborated that "[t]he Consent Decrees achieved that objective by guaranteeing continued access to certain UPMC services at in-network rates for specific groups of patients—including cancer patients, those currently in a course of treatment with a UPMC doctor, those considered to be 'vulnerable populations,' and others." *Id.*

Approximately two months after the Consent Decrees were entered, on September 3, 2014, Highmark filed the lawsuit underlying this appeal. In this lawsuit, Highmark asserts claims for breach of contract and unjust enrichment, challenging the purportedly inflated billing rates charged by UPMC from August 2010 through March 2014.[3] Highmark's Brief at 10. Highmark seeks to be "made whole for overpayments Highmark made to UPMC…. [] UPMC was unjustly enriched when it improperly shifted billing for oncology services from a lower physician rate to a higher outpatient hospital rate—despite that there had been no change in the service rendered or the actual site of service." *Id.* at 3. Highmark claims that while its "April 2014 rate change attempted to address the problem going forward, it did not address UPMC's past wrongful billing practices." *Id.* at 10. Highmark bases

_____

[3] We note that Highmark initially sought a declaratory judgment, but that request was withdrawn in its Amended Complaint, dated November 21, 2014. Highmark's Brief at 10.

its breach of contract claims on various contracts entered into between Highmark and UPMC. ***See id.*** at 18 (explaining that Highmark asserts "claims against the three physician group practices for breach of the agreements between Highmark and each of those practices," "a claim against UPMC for breach of the Oncology Drug Agreement," and "claims for breach of multiple contracts by UPMC and the … UPMC hospitals").

UPMC subsequently sought to dismiss this lawsuit and compel arbitration, arguing that the Consent Decrees required arbitration of Highmark's claims in this case*.* UPMC's Brief at 14, 16. In short, UPMC argued that "the Consent Decrees were an arbitration agreement that tie[d] into one comprehensive, binding arbitration all of the parties' disputes over oncology reimbursements." ***Id.*** at 16 (citations and quotations omitted). The trial court, however, overruled UPMC's preliminary objections and denied its motion to compel arbitration. Trial Court Opinion (TCO), 5/22/2015, at 9. The trial court determined that "the parties' intent can be determined based solely upon the contractual terms at issue" and, therefore, it did not "consider[] any extrinsic evidence, such as the Consent Decrees." ***Id.*** at 2-3, 9. Ultimately, it concluded that the contracts underlying Highmark's lawsuit — that is, the agreements between Highmark and the Physician Group Practices, the agreements between Highmark and the UPMC

hospitals, and the Oncology Drug Agreement — did not require arbitration of Highmark's claims.[4]  *Id.* at 9.

Following the trial court's order, UPMC filed a timely notice of appeal to this Court.[5]  In its appeal, UPMC raises two issues for our review:

> A. Did the trial court err in failing to consider the parties' Consent Decrees, when UPMC asserted those agreements as the basis for the arbitration?

> B. Did the trial court err in ruling on UPMC's motion to compel arbitration without holding an evidentiary hearing when numerous underlying facts were disputed between the parties?

UPMC's Brief at 4 (unnecessary emphasis omitted).[6]

_____

[4] In their briefs, both parties acknowledge that the underlying contracts do not require arbitration.  *See* Highmark's Brief at 18 ("Only some of the agreements between Highmark and UPMC contain arbitration provisions—and none of those arbitration provisions cover the claims Highmark advances in this litigation."); UPMC's Reply Brief at 7 ("Highmark follows the trial court's fatally flawed lead and devotes significant attention to the unremarkable—and irrelevant—question of whether the parties' *other* contracts require arbitration.  But UPMC *never argued* the point, and never identified those contracts as the source of Highmark's obligation to arbitrate.") (emphasis in original).

[5] We acknowledge that "[a]s a general rule, an order denying a party's preliminary objections is interlocutory and, thus, not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration."  *Elwyn v. DeLuca*, 48 A.3d 457, 460 n.4 (Pa. Super. 2012) (citations omitted).

[6] At the outset, UPMC's brief contained an additional issue, regarding whether the trial court erred "by not staying the case either pursuant to 42 Pa. C.S.A. § 7304(d) pending the outcome of a pending arbitration, or pursuant to the court's discretion pending a separate appeal to this Court raising some of the issues present in this case[.]"  UPMC's Brief at 4.  On

*(Footnote Continued Next Page)*

Initially, we note that "[o]ur scope and standard of review of a claim that the trial court erred in overruling a preliminary objection in the nature of a motion to compel arbitration is whether there has been an abuse of discretion and whether the trial court's findings are supported by substantial evidence." ***Washburn v. Northern Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa. Super. 2015) (citation omitted). This Court applies "a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." ***Id.*** (citations omitted). We have explained that "[w]hether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." ***Elwyn***, 48 A.3d at 461 (citations omitted). ***See also Warwick Township Water and Sewer Authority v. Boucher & James, Inc.,*** 851 A.2d 953, 955 (Pa. Super. 2004) ("The existence of an agreement and whether a dispute is within the scope of the agreement are questions of law and our review is plenary.") (citation omitted).

---
*(Footnote Continued)*

February 25, 2016, UPMC withdrew this argument, based on mootness, "[b]ecause of the conclusion of the arbitrations and the discontinuance of the prior appeal and underlying lawsuit[.]" ***See*** Notice of Partial Withdrawal, 2/25/2016, at 3, ¶ 9. Accordingly, we need not consider this issue here.

We begin by deciding whether the trial court erred by not considering and interpreting the parties' Consent Decrees. UPMC asserts that "the trial court declined to compel arbitration without considering the arbitration agreement," *i.e.*, the Consent Decrees. UPMC's Brief at 19. UPMC maintains that "the Consent Decrees are agreements in their own right that require arbitration independent of any other contract[,]" and it emphasizes that it did not seek to compel arbitration under any prior agreements but, instead, only based on the Consent Decrees. *Id.* at 23. Moreover, it states that "[t]he Consent Decrees' express terms require arbitration of all oncology rate and billing disputes, which are indeed tied together by the 'causal or factual link' of UPMC's hospital-based billing." UPMC's Reply Brief at 2 (quoting Highmark's brief).

We agree that the trial court should have considered UPMC's asserted basis for arbitration — the Consent Decrees. *See Collier v. National Penn Bank*, 128 A.3d 307 (Pa. Super. 2015) (considering arbitration provision in separate contract asserted by appellant); *Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania*, 785 A.2d 93 (Pa. Super. 2001) (looking at dispute resolution provisions in both a license agreement and joint operating agreement).[7] While we could vacate the trial

_____

[7] Highmark argues that the trial court "looked at the Consent Decrees to the extent needed to address the only question that was relevant to UPMC's motion to compel arbitration—whether the Consent Decrees amended or overrode the parties' arbitration agreements." Highmark's Brief at 21.
*(Footnote Continued Next Page)*

court's order and remand this matter for it to interpret the Consent Decrees, this case raises questions of law — rather than fact — and, thus, we are permitted to continue our review and render a legal conclusion. ***See Sanitary Sewer Authority of Borough of Shickshinny v. Dial Associates Construction Group, Inc.***, 532 A.2d 862, 864-65 (Pa. Super. 1987).[8]  ***See also Smith v. Cumberland Group, Ltd.***, 687 A.2d 1167, 1171 (Pa. Super. 1997) ("Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court.") (citation omitted).  Accordingly, we examine the Consent Decrees.

We reiterate that this Court applies "a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid

*(Footnote Continued)* _____

However, the trial court's opinion contains no such analysis, and it explicitly stated that it "has ***not considered*** any extrinsic evidence, such as the Consent Decrees."  TCO at 9 (emphasis added).  Moreover, we are persuaded by UPMC's argument that "[t]he Consent Decrees are not evidence about some other agreements; they are themselves agreements[.]"  UPMC's Brief at 23.  Further, it states that "[t]he later Consent Decrees cannot be 'extrinsic evidence' of hospital and provider contracts signed over a decade earlier."  UPMC's Reply Brief at 8.

[8] In ***Sanitary Sewer Authority***, the trial court failed to "determine whether the dispute involved in the arbitration proceeding is covered by the arbitration clause of the contract."  ***Sanitary Sewer Authority***, 532 A.2d at 865.  In response, this Court reasoned that "[a]lthough we could vacate the order granting the stay and remand the case for the trial court to make this determination, this issue is one of law rather than fact; in the interest of judicial economy, we shall examine the dispute, along with the arbitration clause, and reach a legal conclusion."  ***Id.*** (citations omitted).  This same reasoning applies to the case *sub judice*.

- 10 -

agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." **Washburn**, 121 A.3d at 1012 (citation omitted). "Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication." **Elwyn**, 48 A.3d at 461 (citation omitted).

Even if we presume that UPMC met the two-part test set forth above, we nevertheless would not compel arbitration because the proper procedure for doing so under the Consent Decrees has not been met. Highmark's Consent Decree, which again is a mirror-image of UPMC's Consent Decree, provides for the following, in relevant part:

IV. **TERMS**

[Highmark] shall comply with the following terms:

\*\*\*

C. **Miscellaneous Terms**

4. **Enforcement of the Consent Decree**- The [Office of the Attorney General ("OAG")], [Pennsylvania Department of Insurance ("PID"),] and [Pennsylvania Department of Health ("DOH")] shall have **exclusive jurisdiction** to enforce the Consent Decree.

(a) **If the OAG, PID or DOH believe that a violation of the Consent Decree has taken place, they shall so advise [Highmark] and give [Highmark] twenty (20) days to cure the violation. If after that time the violation is not cured, the OAG, PID or DOH may seek enforcement of the Consent Decree in the**

***Commonwealth Court;*** (b) Any person who believes they have been aggrieved by a violation of this Consent Decree may file a complaint with the OAG, PID or DOH for review. If after that review, the OAG, PID, or DOH believes either a violation of the Consent Decree has occurred or they need additional information to evaluate the complaint, the complaint shall be forwarded to Highmark for a response within thirty (30) days. If after receiving the response, the OAG, PID or DOH, believe a violation of the Consent Decree has occurred, they shall so advise Highmark and give Highmark twenty (20) days to cure the violation. If after that time the violation is not cured, the OAG, PID or DOH may seek enforcement of the Consent Decree in [the Commonwealth Court of Pennsylvania]. []

\*\*\*

11. **Retention of Jurisdiction**- Unless this Consent Decree is terminated, jurisdiction is retained by the Commonwealth Court of Pennsylvania to enable any party to apply to this Court for such further orders and directions as may be necessary and appropriate for the interpretation, modification and enforcement of this Consent Decree.

Highmark's Consent Decree, 7/1/2014, at 6, 11, 14-15, 17 (emphasis added).

As noted *supra*, we must strictly construe the Consent Decrees. They expressly state that if a violation of the Consent Decrees has occurred, Commonwealth officials have exclusive jurisdiction to enforce their terms.[9]

---

[9] In its reply brief, UPMC argues that section IV(C)(11) ("Retention of Jurisdiction"), cited *supra*, permits UPMC to enforce the Consent Decrees. UPMC's Reply Brief at 10. That section, however, does not delegate direct power to Highmark or UPMC to enforce the Consent Decrees, but instead requires them to seek enforcement through the Commonwealth Court. *(Footnote Continued Next Page)*

Therefore, if Highmark violated the Consent Decrees by filing this lawsuit, Commonwealth officials — and, notably, not UPMC — have exclusive jurisdiction to enforce the arbitration provisions of the Consent Decrees and compel Highmark to dismiss this lawsuit. It is undisputed between the parties that Commonwealth officials have taken no such enforcement action to stop this litigation from proceeding.[10] Further, because Commonwealth officials have not sought to dismiss this lawsuit or compel arbitration, we must conclude that the arbitration provisions in the Consent Decrees do not require arbitration of the issues raised in Highmark's Complaint.[11] Finally,

_(Footnote Continued)_ ————————

[10] In its brief, Highmark points out that "state officials with 'exclusive jurisdiction' to enforce the Consent Decrees have not acted to force Highmark to dismiss this case." **See** Highmark's Brief at 31, n.13 (citing Record evidence). UPMC does not dispute this assertion in its brief or reply brief. Accordingly, no question of fact exists regarding this issue.

[11] In their briefs, the parties debate whether the underlying dispute falls within the scope of the arbitration provisions in the Consent Decrees. Both parties focus on the "current arbitration" language in section IV(C)(1)(a)(ii) of the Consent Decrees. **See** Highmark's Consent Decree, at 12. Unsurprisingly, the parties offer starkly different interpretations of what matters the "current arbitration" encompass. **See** Highmark's Brief at 28-29 ("The Consent Decrees do not say that the 'current arbitration' is a receptacle for all of the parties' past, present and future disputes. Instead, the Consent Decrees reference the current arbitration for a very specific and narrow reason—explaining how resolution of the current arbitration will affect the parties' 2014 and 2015 rates for oncology drugs and services."); UPMC's Brief at 25 ("Highmark's lawsuit and the 'current arbitration' involve the same contracts between the same parties related to the same billing practices, service locations, and reimbursement rates. Highmark seeks damages dating from August 2010 'through the present,' a period that overlaps directly with the arbitrations."). Because we determine the
_(Footnote Continued Next Page)_

because this is a purely legal question based on the express terms of the Consent Decrees, and there are no questions of fact at issue, we also determine that an evidentiary hearing is unnecessary. As such, we affirm the trial court's order overruling UPMC's preliminary objections and denying its motion to compel arbitration.[12]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2016

_(Footnote Continued)_ ───────────────

enforcement provision of the Consent Decrees to be dispositive of the issues raised on appeal, we find no need to interpret the meaning of "current arbitration" here.

[12] "[N]otwithstanding the trial court's stated grounds, if its result is correct, this Court can affirm the trial court on any basis." **_See, e.g., Staub v. Staub_**, 960 A.2d 848, 853 (Pa. Super. 2008) (citation omitted).